UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DESHAWN WELCH,

        Petitioner,

V.

JOHN BURGE,

        Respondent.

**REPORT AND RECOMMENDATION**

03-CV-1423

## I. INTRODUCTION

Petitioner DeShawn Welch, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Clinton Correctional Facility. In 2001, he was convicted in a New York State court of Criminal Possession of a Weapon in the Third Degree and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

## II. BACKGROUND

**A.**    **Facts**

The following factual summary is derived from the state court records. On August

3, 2000, in Syracuse, New York, Petitioner shot himself in the foot. (HH[1] at 4-6). Syracuse Police Officer David Armstrong learned there was a shooting and responded to the scene to assist in the investigation. (HH at 4). He then visited Petitioner at St. Joseph's Hospital, where Petitioner admitted that he possessed a gun that accidentally discharged and shot himself in the foot. (HH at 7). After Petitioner received treatment for his foot, Officer Armstrong drove him to the police station, read him his Miranda[2] warnings, and took a written statement. (HH at 9).

Thereafter, an Onondaga County Grand Jury returned Indictment Number 2000-0867-1, which charged Petitioner with Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law ("NYPL")[3] §265.02(4)[4]. On October 18, 2000, Petitioner, represented by Eric B. Jeschke, Esq., was arraigned on the indictment and entered a plea of not guilty.

**B.    State Trial Court Proceedings**

The Honorable Joseph E. Fahey, Onondaga County Court Judge, presided over

---

[1] References preceded by "HH" are to the transcript pages of the Huntley hearing held on February 5, 2001. A hearing pursuant to, People v. Huntley, 255 N.Y.S.2d 838 (1965), is held to determine the voluntariness of a criminal defendant's statements to the police.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

[3] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

[4] NYPL §265.20 lists exemptions that apply to NYPL §265.02(4). For example the exemption applies to police officers, persons serving in the military, persons at an indoor or outdoor shooting range, persons who possess a license for their weapon, etc. See NYPL §265.20. In this case, there is no argument offered that any of the exemptions applied to Petitioner as he was a felon in possession of a weapon.

Petitioner's trial court proceedings. On February 5, 2001, Petitioner had a <u>Huntley</u> hearing[5] to determine the voluntariness of his statements to the police. Judge Fahey found that the oral statements made by Petitioner while in the hospital were not custodial and therefore no constitutional warnings were required. (HH at 38). Additionally, Judge Fahey found that the written statement by Petitioner was preceded by proper <u>Miranda</u> warnings and therefore did not warrant suppression. (HH at 38-39).

Petitioner's trial began on May 21, 2001. Attorney Jeschke continued to represent Petitioner at trial. On May 23, 2001, the jury found Petitioner guilty of Criminal Possession of a Weapon in the Third Degree. (T[6] at 410). On June 14, 2001, Petitioner was sentenced as a second violent felony offender to a determinate sentence of seven years imprisonment.[7] (S[8] at 3, 6).

**C.     State Appellate Proceedings**

Petitioner, represented by Shirley K. Duffy, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court. Petitioner

---

[5]At the start of Petitioner's <u>Huntley</u> hearing, the trial court explained to him that he had the opportunity to plea guilty to a lesser offense with a determinate sentence of two years and that if he decided to reject that plea offer and were found guilty, he could be sentenced to a maximum of seven years imprisonment. (HH at 2). Petitioner indicated that he understood and he rejected the plea offer. (HH at 3).

[6]References preceded by "T" are to the transcript pages of Petitioner's jury trial.

[7]Seven years was the maximum penalty for Petitioner's offense. Judge Fahey made reference to the fact that Petitioner was a member of a street gang, and that he carried the gun so that he could kill or injure members of a rival gang that might try to kill him. (S at 5-6). When sentencing Petitioner to the maximum sentence, Judge Fahey stated that he wanted to "send a message that we're not going to tolerate gang activity in the city." (S at 6).

[8]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

asserted that (1) the prosecution's peremptory challenge to a black female prospective juror violated his equal protection rights, (2) the verdict was against the weight of the evidence, and (3) that his sentence was unduly harsh and excessive.

In a decision issued on October 1, 2002, the Appellate Division affirmed Petitioner's conviction and sentence. People v. Welch, 747 N.Y.S.2d 843 (4th Dept 2002). The appeals court found that the prosecutor gave a race-neutral explanation for exercising a peremptory challenge and that Petitioner failed to establish that the explanation was a pretext. Id. The appeals court further held that the verdict was not against the weight of the evidence and that the sentence was neither unduly harsh nor severe. Id.

Petitioner's application for leave to appeal to the Court of Appeals was denied on December 2, 2002. People v.Welch, 99 N.Y.2d 565 (2002).

**D.  Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on November 26, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Petitioner asserts the same three grounds for habeas relief as he did before the Appellate Division, namely, that: (1) the peremptory challenge with respect to a black female prospective juror violated his equal protection rights, (2) the verdict was against the weight of the evidence, and (3) that his sentence was unduly harsh and severe. See (Docket No. 1 at 5-6). Thereafter, Respondent filed submissions in opposition. See (Docket No. 8).

For the reasons that follow, the Court recommends that the Petition be DENIED.

## III. DISCUSSION

### A. Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714,

715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

As set forth above, Petitioner asserts the following three claims in support of this Petition: (1) that the peremptory challenge to a black female prospective juror violated his equal protection rights, (2) that the verdict was against the weight of the evidence, and (3) that his sentence was unduly harsh and severe.

**1.     Peremptory Challenge**

Petitioner's first claim is that the prosecutor's peremptory challenge to a black female prospective juror violated his right to equal protection of the law and that the trial court's denial of his Batson[9] challenge was reversible error.

To establish a prima facie case under Batson, the moving party must demonstrate that the circumstances give rise to an inference that the prospective juror was struck because of his or her race. See Galarza v. Keane, 252 F.3d 630, 636 (2d Cir. 2001). Next, if the trial court finds that the party making the Batson challenge has established a prima facie case, it must require the non-moving party to proffer a race-neutral explanation for striking the potential juror. Id. Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving by a preponderance of the evidence that the strike was "motivated by purposeful discrimination." Id.

In the present case, the prosecution used a peremptory challenge to remove Ms. Barbra Jones from the jury pool. Ms. Jones was the only African American in the jury pool.

---

[9]Batson v. Kentucky, 476 U.S. 79, 84 (1986)

(T at 76). When asked for a race-neutral explanation for using his challenge, the prosecutor stated that it was based on "[h]er religious affiliation, her inability to look at me when I'm talking about the [sic] sitting impartial as a Judge of [Petitioner] and also her comments about guns on the east side[10]." (T at 76).

Petitioner's trial counsel challenged that explanation. (T at 76). Specifically, Petitioner's attorney stated that the prosecutor didn't examine Ms. Jones closely enough to draw any conclusions warranting her exclusion from the jury. (T at 77). However, when the trial court opined that he did not believe the prosecutor's explanation to be pretextual, Petitioner's trial attorney made no further argument in opposition to the prosecutor's challenge. (T at 77).

The Appellate Division concluded that the trial court "properly determined that the prosecutor's explanation for exercising a peremptory challenge with respect to that juror was race-neutral and that defendant failed to meet his ultimate burden of establishing that the explanation was a pretext for racial discrimination." Welch, 747 N.Y. at 843.

At the outset, the Court notes that "[t]he credibility of an attorney offering a race-neutral explanation is at the very heart of [the] analysis," Barnes v. Anderson, 202 F.3d 150, 157 (2d Cir.1999), the reviewing court "ordinarily should give [the trial court's] findings great deference." Batson v. Kentucky, 476 U.S. at 98 n. 21; accord Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

In Overton v. Newton, 295 F.3d at 277, the Second Circuit clarified that the

---

[10]During voir dire, Petitioner's trial counsel asked Ms. Jones if she had any problems with violence or guns where she lives on the east side of Syracuse. Ms. Jones responded that she did not and that she had never heard a gun go off. (T at 72).

determination of whether a prima facie case of discriminatory use of a peremptory has been established is a mixed question of fact and law subject to the standard set forth in 28 U.S.C. § 2254(d)(1). Overton, 295 F.3d at 277. Thus, in order to grant Petitioner a writ of habeas corpus, this Court must determine whether the state courts unreasonably applied, (see 28 U.S.C. § 2254(d)(1)(A)), the standard set forth in Batson in finding that the trial court "properly determined that the prosecutor's explanation for exercising a peremptory challenge, with respect to that juror, was race-neutral and that defendant failed to meet his ultimate burden of establishing that the explanation was a pretext for racial discrimination.

Neither the Supreme Court nor the Second Circuit has outlined with definition which factors or circumstances the trial court should consider when determining whether the party raising a Batson challenge has made a prima facie showing of discrimination in the use of peremptory challenges. Overton, 295 F.3d at 278. In Batson, the Supreme Court did not set a precise threshold to govern when a prima facie case has been established but rather directed trial courts to examine "all relevant circumstances" in deciding when a prima facie case had been established. The Supreme Court observed that the "total or seriously disproportionate exclusion" of members of a racial group from a jury venire or a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination; in addition, the non-moving party's questions and statements during voir dire examination and in exercising his challenges might support or refute an inference of discriminatory purpose. Batson, 476 U.S. at 93-94, 96-97; see also Johnson v. California, 125 S.Ct. 2410, 2417 (2005) (holding that a prima facie case under Batson only requires "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred"); accord Tankleff v. Senkowski, 135 F.3d 235, 249 (2d Cir.

1998) (stating that "courts should consider how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen, the pattern of strikes against racial group jurors in the particular venire, the prosecutor's statements and questions during selection, as well as any other relevant circumstances"; so holding in the context of a challenge under Powers v. Ohio, 499 U.S. 400, 415 (1991), which held that a defendant may raise a Batson challenge whether or not the defendant and the excluded jurors share the same race); Overton, 295 F.3d at 277-78.

Batson makes clear, however, that the examples listed are "merely illustrative." Batson, 476 U.S. at 97; Overton, 295 F.3d at 278 ("Other than through these illustrative examples, the [Supreme] Court has not, to date, provided a more particularized view of what constitutes a prima facie showing of discrimination under Batson.") The Second Circuit has observed that "[c]ourts have used a . . . multi-factor analysis in analyzing prima facie showings under Batson," which requires an examination of "the totality of the circumstances." Harris v. Kuhlmann, 346 F.3d 330, 345 (2d Cir. 2003).

At the second Batson step, the prosecutor may not simply deny that he had a discriminatory motive or affirm his good faith. Batson, 476 U.S. at 97, 106 S.Ct. 1712. Rather, he must "articulate a neutral explanation related to the particular case to be tried." Id. at 98, 106 S.Ct. 1712. As the Supreme Court later held, the explanation need not be "persuasive, or even plausible," and may even be silly or superstitious, provided that it does not deny equal protection on its face. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769 (1995).

At the third and final step, the trial court is called upon to determine whether the opponent of the strike has carried his burden of proving "purposeful discrimination." Id. At

10

this step, the trial court's analysis will focus on the credibility of the attorney exercising the peremptory challenge. Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859 (1991) ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed."). See also Galarza, 252 F.3d at 636 ("[A] trial court may not deny a Batson motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes."); Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000) ("[T]he third step of the Batson inquiry requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances.").

Here, the prosecution offered a facially race-neutral explanation for the challenge of the single black juror, Ms. Jones, in the venire. A trial court is in the best position to weigh the credibility of the attorney offering the race-neutral explanation. Whether the prosecutor's explanation as his reasons for challenging Ms. Jones was credible is precisely the sort of assessment that a trial court is in far superior position than an appellate (or habeas) court to make. See Miller-El v. Cockrell, 537 U.S. 322, 339 (2003)(stating that the trial judge can measure the credibility of a prosecutor's race-neutral explanations by reference to several factors, including its personal observations of the juror and of "the prosecutor's demeanor; by how reasonable, or how improbable the explanations are, and by whether the proffered rationale has some basis in accepted trial strategy").

Consequently*,* this Court finds that Petitioner has failed to show that the Appellate Division's decision in this regard was contrary to or an unreasonable application of federal law or that it was based upon an unreasonable factual determination in light of the facts presented. See Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992) ("An impression of the

conduct and demeanor of a prospective juror during the voir dire may provide a legitimate basis for the exercise of a peremptory challenge."); see also Lewis v. Bennett, 435 F. Supp.2d 184, 192 (W.D.N.Y. 2006).  Moreover, Petitioner's trial counsel indicated that he "respect[ed]" the prosecutor's explanation and offered no further objection to the racial composition of the jury.

Accordingly, Petitioner's claim for habeas relief based on this ground should be DENIED.

### 2. Sufficiency of the Evidence

Petitioner's second ground for habeas relief is that the verdict was against the weight of the evidence.  Specifically, Petitioner argues that the "officer's [*sic*] who testified, gave testimony that was based on speculation and was purely an opinion and invaded the province of the jury." (Docket No. 1 at 5).  Additionally, Petitioner states that "Dr. Seeley's testimony was based on speculation and invaded the province of the jury."  (Id.).  Respondent argues that the evidence is sufficient to support Petitioner's conviction and notes that a "weight of the evidence" claim is not cognizable on habeas review.  (Docket No. 8 at 9-13).

A claim that a jury verdict was against the weight of the evidence is purely a state law claim.  Specifically, such a claim is based upon § 470.15(5) of the New York Criminal Procedure Law, which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."

Thus, a "weight of the evidence" argument is a state law claim grounded in the

criminal procedure statute. In contrast, a claim challenging the legal sufficiency of the evidence is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same); Garbez v. Greiner, No. 01Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim.").

However, in keeping with the principle that *pro se* petitioners' complaints are to be

13

considered liberally in their favor, Haines v. Kerner, 404 U.S. 519, 520 (1972), this Court will construe Petitioner's claim to be a "sufficiency of the evidence" argument. See Davis v. McLaughlin, 122 F.Supp.2d 437, 441 (S.D.N.Y.2000) (treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim); Wilson v. Senkowski, No. 02 Civ. 0231(HB)(AJP), 2003 WL 21031975, at *8 (S.D.N.Y. May 7, 2003) (denying "weight of the evidence-claim as not cognizable on federal habeas review but also "broadly interpret[ing]" petitioner's "weight of the evidence" claim to raise a "sufficiency of the evidence claim") (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999)).

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the

applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]" Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996). Thus, under this standard, a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

Although Petitioner challenges the testimony of a physician and a police officer, he offers no factual basis to support his assertion that their testimony was speculation. See (Docket No. 1 at 5). Petitioner was convicted of Criminal Possession of a Weapon in the Third Degree pursuant to N.Y.P.L. §265.02(4). Section 265.02(4) provides that:

> a person is guilty of criminal possession of a weapon in the third degree when. . . such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven, constitute a violation of this section if such possession takes place in such person's home or place of business."

In the present case, Dr. Seeley's testimony confirmed that Petitioner was shot in the foot as well as confirming Petitioner's admission that his wound was self-inflicted. (T at 324-35). However, in addition to Dr. Seeley's testimony, Petitioner made an oral confession and reduced his confession to writing after being given his *Miranda* warnings. (T at 282, 291). In those statements, Petitioner admitted to possessing a loaded firearm

outside of his home or place of business. (Id.). Accordingly, based on those statements alone, any reasonable juror could have found Petitioner guilty of criminally possessing a weapon. Petitioner is unable to establish that the Appellate Division's determination that his conviction was supported by the evidence was contrary to or involved an unreasonable application of clearly established Federal law and his second claim for habeas relief should therefore be DENIED.

### 3. Harsh and Excessive Sentence

Lastly, Petitioner claims that his sentence of seven years was harsh and excessive because there were no victims other than himself. (Docket No. 1 at 6). The Appellate Division denied this claim on the merits, finding that the sentence was "not unduly harsh or severe." Welch, 747 N.Y.S.2d 843. Respondent argues that this claim is not cognizable on federal habeas review because Petitioner's sentence falls within the sentencing range for this crime.

A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992). A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948)("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the

state court's denial of habeas corpus.")).

Petitioner was sentenced to a determinate term of seven years for his conviction of Criminal Possession of a Weapon in the Third Degree (a Class D felony offense). (S at 6). The New York Penal Law §70.00(2)(d) provides that a sentence for a conviction of a Class D felony authorizes the court to impose a sentence that "shall not exceed seven years." Petitioner's sentence was within the statutory range. As such, his claim that the sentence was harsh and excessive is not cognizable on habeas corpus review. It is therefore recommended that Petitioner's third claim for habeas relief be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends DeShawn Welch's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that the Petition be dismissed. Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, this Court recommends that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:       May 24, 2007

        Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[11]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1©.**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

---

[11] According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Clinton Correctional Facility, therefore, the correct Respondent is Dale Artus, the Superintendent of the Clinton Correctional Facility.  28 U.S.C. § 2243.  In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Dale Artus.
   The Clerk of the Court is directed to terminate John Burge as Respondent, add Dale Artus, Superintendent of the Clinton Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

19

consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 24, 2007

_____
Victor E. Bianchini
United States Magistrate Judge